**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

CALPINE CORPORATION, et al.,

Debtors.

Chapter 11

Case No. 05-60200 (BRL)

ARISTEIA CAPITAL, L.L.C., AURELIUS CAPITAL MANAGEMENT, L.P., DRAWBRIDGE SPECIAL OPPORTUNITIES ADVISORS LLC, ORE HILL HUB FUND LTD., NISSWA MASTER FUND LTD., PINES EDGE VALUE INVESTORS LTD., PINES EDGE VALUE INVESTORS L.P., SILVER SANDS FUND LLC, STARK MASTER FUND LTD., 3V CAPITAL MANAGEMENT, LLC, BRENCOURT CREDIT OPPORTUNITIES MASTER, LTD., BRENCOURT MULTI-STRATEGY ENHANCED DEDICATED FUND, LP, DILLON READ U.S. FINANCE L.P., DILLON READ FINANCIAL PRODUCTS TRADING LTD., LINDEN CAPITAL L.P. AND ORE HILL HUB FUND, LTD., HSBC BANK USA, N.A., AS INDENTURE TRUSTEE FOR THE 6% CONVERTIBLE NOTES DUE 2014 AND THE 4.75% CONTINGENT CONVERTIBLE NOTES DUE 2023, AND MANUFACTURERS & TRADERS TRUST COMPANY, AS INDENTURE TRUSTEE FOR THE 7.75% CONVERTIBLE NOTES,

Appellants,

-against-

CALPINE CORPORATION AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION, OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF CALPINE CORPORATION, OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS,

Appellees.

Civil Case No. 07-CV-7830 (JGK)
(Consolidated with Civil Case Nos. 07-CV-7831, 07-CV-7832 and 07-CV-7867)

**APPELLANT, MANUFACTURERS AND TRADERS TRUST COMPANY'S (I) REPLY BRIEF AND (II) JOINDER TO REPLY BRIEF OF APPELLANTS, HOLDERS OF THE 7.75% CONVERTIBLE NOTES**

YOUNG CONAWAY STARGATT & TAYLOR, LLP
Pauline K. Morgan (PM-3361)
Ian S. Fredericks (IF-3355)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, Delaware 19899-0391
Telephone: 302.571.6600
Facsimile: 302.571.1253

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

INTRODUCTION .......... 1

PRELIMINARY STATEMENT .......... 2

STATEMENT OF ADDITIONAL FACTS .......... 4

REPLY ARGUMENT .......... 7

I. THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW WHEN THE BANKRUPTCY COURT ENTERED THE ORDER .......... 7

II. THE INDENTURE TRUSTEE WAS NOT GIVEN ADEQUATE NOTICE AND WAS DEPRIVED DUE PROCESS, NOTWITHSTANDING THE APPELLEES' ASSERTIONS OTHERWISE .......... 7

A. The Debtors Were Required To Provide Adequate Notice By Supporting Their Relief Requested With Some Specificity, But Consciously Chose Not To Do So .......... 8

B. The Debtors Were Under An Obligation To Specifically Object To Those Claims Expressly Set Forth In The Proof Of Claim And The Indenture Trustee Was Not Obligated To Raise All Of Its Asserted Claims In Its Pleadings Or At The Hearing .......... 11

III. THE APPELLEES FAIL TO CITE ANY FINDING OF FACT OR CONCLUSION OF LAW RELATING TO ANY UNLIQUIDATED CLAIM OTHER THAN THE CONVERSION RIGHT CLAIM .......... 13

CONCLUSION .......... 17

# TABLE OF AUTHORITIES

## CASES

C-TC 9th Ave. Pshp. v. Norton Co. (In re C-TC 9th Ave. Pshp.), 113 F.3d 1304, 1312 (2d Cir. 1997) .......... 13

In re Adelphia Communs. Corp., 2007 Bankr. LEXIS 660, *15 (Bankr. S.D.N.Y. Feb. 20, 2007) .......... 11

See In re Bagnato, 80 B.R. 655, 658 (S.D.N.Y. 1987) .......... 11-12

In re Calpine Corp., 365 B.R. 392 (Bankr. S.D.N.Y. 2007) .......... 3

In re Case, 198 F.3d 327, 334 (2d Cir. 1999) .......... 15

In re Dresser, 135 F. 495 (2d Cir. 1905), aff'd, Whitney v. Dresser, 200 U.S. 532 (1906) .......... 11

In re Friedman, 436 F. Supp. 234 (D. Md. 1977) .......... 12

In re JCC Capital Corp., 142 B.R. 82 (Bankr. S.D.N.Y. 1992) .......... 11, 12

In re Johns-Manville Corp., 340 B.R. 49 (S.D.N.Y. 2006) (Koeltl, J.), aff'd, 476 F.3d 118 (2d Cir. 2007) .......... 8

In re King, 305 B.R. 152, 164-65 (Bankr. S.D.N.Y. 2004) .......... 11

Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.), 279 F.3d 148, 153 (2d Cir. 2002) .......... 8

Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178 (2d Cir. 1995) .......... 15

Taylor v. Taylor (In re Taylor), 233 B.R. 639 (S.D.N.Y. 1999) .......... 13

## STATUTES AND RULES

11 U.S.C. § 502 .......... 11

Fed. R. Bankr. P. 3001 .......... 11

Fed. R. Bankr. P. 3012 .......... 9

## INTRODUCTION

Appellant, M&T (or the Indenture Trustee),[1] in its capacity as successor indenture trustee on behalf of the holders of the 7.75% Convertible Notes issued by Calpine pursuant to 7.75% Indenture,[2] hereby submits this brief in reply to the briefs submitted by (i) the Debtors (the "Debtors' Brief"), (ii) the Creditors Committee (the "CC Brief"), and (iii) the Equity Committee (the "EC Brief", the Debtors, the Creditors Committee and the Equity Committee are collectively referred to as the "Appellees") and in support of its appeal taken from the Order entered by the Bankruptcy Court on August 10, 2007.

---

1 All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in Appellant, Manufacturers and Traders Trust Company (I) Opening Brief and (II) Joinder to Opening Brief of Appellants, Holders of the 7.75% Convertible Notes (Docket No. 5 in Civil Case No. 07-CV-7867; the "Opening Brief")

2 Certain documents relied upon herein by M&T were included in the Appendix filed along with the Opening Brief (the "Appendix"). For ease of reference, citations to documents included in the Appendix will appear as [___], App. Ex. [__], at [__]. In connection with the filing of this brief, M&T will also file a supplemental appendix (the "Supplemental Appendix"), which includes additional documents not cited in the Opening Brief or included in the Appendix. Citations to the Supplemental Appendix will appear as [____], Supp. App. Ex. [__], at [__].

## PRELIMINARY STATEMENT

It is with the utmost respect for the Bankruptcy Court[3] that M&T submits that the Bankruptcy Court erred when it entered the Order because, among other things, the Indenture Trustee was deprived due process and because certain material provisions of the Order were not supported by the record, including that the record lacked necessary findings of fact and conclusions of law. With the Indenture Trustee's latter contention, the Appellees do not appear to materially disagree because they do not cite or quote any specific findings of fact or conclusions of law in the Transcript Opinion or the Order to support disallowance of other unliquidated amounts,[4] including, for example, indenture trustee fees and expenses[5] or a premium, prepayment,

---

[3] Contrary to the unsupported assertions of the Appellees, M&T and its counsel have the utmost respect for the Bankruptcy Court and have not suggested and do not suggest that Chief Judge Lifland acted with any impropriety or "favoritism" when His Honor entered the Order. Further, M&T did not and does not suggest that Chief Judge Lifland's entry of the Order amounted to an "award" to the Debtors (or the Appellees). To be certain, any reasonable inferences from M&T's statements in the Opening Brief do not suggest otherwise, and neither the word "favor" nor the word "award," nor any variation thereof, appears in the Opening Brief.

Instead, M&T respectfully submitted in the Opening Brief that the Bankruptcy Court committed reversible error. However, on page 39 of the EC Brief, the Equity Committee stated that "Appellants' insinuations that the Bankruptcy Court disregarded with their positions and somehow 'favored' the Debtors by awarding them with entry of the Revised Proposed Order is unfounded and disrespectful. See M&T Brief at 13-14, 20." EC Brief at 39. This statement does not find support, through an inference or otherwise, anywhere in the Opening Brief, let alone the pages to which the Equity Committee cited. Indeed, the Equity Committee's and its counsel's statement is unsupported and incorrect.

[4] See, infra, at 13-14 for a discussion of the Appellees' limited and brief contentions that the record contains adequate findings of fact and conclusions of law.

[5] It is not clear from the language of the Order (or the record) whether the Order bars the Indenture Trustee's right to recover post-petition fees and expenses. However, upon information and belief, the Debtors take the position that the Order bars the Indenture Trustee from asserting or recovering post-petition fees and expenses under the Proof of Claim, notwithstanding that the Proof of Claim expressly includes unliquidated amounts related to post-petition fees and expenses and the record is devoid of any reference to disallowance of indenture trustee fees and expenses. See Proof of Claim, App. Ex. D, Addendum at 2.

"make-whole", breach of a "no-call" provision, or otherwise (a "Premium").[6] Why? The record is devoid of any such findings of fact or conclusions of law.

Instead, the Appellees assert that the Indenture Trustee had "notice" of the Debtors' objection to such other unliquidated amounts and "sat on its rights" and the Debtors were not required to object with any specificity. Such assertions are not supported by the record and are inconsistent with the Debtors' prior conduct in these cases. To illustrate, when the Debtors filed the Makewhole Objection wherein they objected to unliquidated amounts asserted by other creditors, including claims for prepayment premiums, "make-whole" premiums or breaches of "no call" provisions, the Debtors filed a 41-page (inclusive of exhibits) analysis and description of such claims and the bases for disallowance thereof. However, notwithstanding that the Original Trustee on behalf of the 7.75% Convertible Noteholders asserted similar claims through nearly identical language, the Debtors did not devote a single sentence of the Limited Objection to the disallowance of a Premium or fees and expenses of the Indenture Trustee.[7] Had the Debtors

---

[6] As set forth more fully in the 7.75% Indenture, the indenture generally provides for payment of a premium. 7.75% Base Indenture, App. Ex. A, at 9 ("Principal" is defined as "the principal of a Security, plus, if applicable, the premium on the security due on the Stated Maturity or on the Redemption Date."); 7.75% Supplemental Indenture, App. Ex. B, at 3.02 (providing limited circumstances pursuant to which the Debtors could redeem the 7.75% Convertible Notes); see also 7.75% Base Indenture, App. Ex. A, §§ 9.1, 9.2. In addition, under the Bankruptcy Court's prior decision in this case, because the 7.75% Convertible Notes may not be redeemed early, *i.e.*, they contain a "no-call" provision, the Indenture Trustee, for the benefit of the 7.75% Convertible Noteholders, is entitled to a damage claim. See In re Calpine Corp., 365 B.R. 392 (Bankr. S.D.N.Y. 2007) ("Accordingly, while the agreements do not provide a premium or liquidated damages for repayment during the period the Debtors propose, the CalGen Secured Lenders still have an unsecured claim for damages for the Debtors' breach of [the no-call provisions of] the agreements.") (Lifland, C.J.).

[7] Notably, the Debtors expressly excluded the Proof of Claim and the Supplemental Proof of Claim from the Makewhole Objection, which further belies their argument that they were not aware that the Indenture Trustee was asserting its entitlement to a Premium. See Makewhole Objection, App. Ex. G, at 5, n.3 ("Calpine's unsecured debt also includes four contingent convertible notes[, including the 7.75% Convertible Notes]. Although the proofs of claim filed in connection with the [7.75% Convertible Notes], the Debtors reserve their rights to object to such claims at a later a date."). The Debtors' assertions to the contrary are disingenuous. See Debtors' Brief at 48, n.136.

provided the Indenture Trustee with adequate notice of their intent to object to other unliquidated amounts beyond the Conversion Right Claim, the Indenture Trustee (and presumably other interested parties) would have responded accordingly.

Therefore, the Indenture Trustee respectfully submits that the Order should be reversed and vacated because the Debtors did not provide adequate notice and the record did not contain sufficient findings of fact or conclusions of law.

## STATEMENT OF ADDITIONAL FACTS

As stated in the Opening Brief, on June 8, 2007 the Debtors filed the Makewhole Objection. Pursuant to the Makewhole Objection,[8] the Debtors sought to disallow (or determine the value of) premiums, including prepayment premiums, "make-whole" premiums, and damage claims resulting from alleged breaches of "no-call" provisions, asserted by various indenture trustees through (i) claim number 2533 filed by U.S. Bank, National Association (the "U.S. Bank Claim"),[9] (ii) claim numbers 2820, 2821, 2822, 2824 and 2825 filed by HSBC Bank USA, N.A. (collectively, the "HSBC Claims"),[10] (iii) claim numbers 3732 and 3733 filed by Goldman Sachs Credit Partners L.P. (the "GS Claims"),[11] and (iv) claim numbers 4055, 4056, 4057, 4058, 4059, 4060, 4061 and 4062 filed by the Original Trustee (Wilmington Trust Company) (collectively, the

---

8 In the Appendix, M&T included the Makewhole Objection without exhibits. To ensure the Court has a complete copy of the Makewhole Objection, the Makewhole Objection, including exhibits, is included in the Supplemental Appendix as Exhibit 1.

9 A copy of the U.S. Bank Claim, without exhibits, is included in the Supplemental Appendix at Exhibit 2.

10 Copies of the HSBC Claims, without exhibits, are included in the Supplemental Appendix at Exhibits 3-A – 3-E.

11 Copies of the GS Claims, without exhibits, are included in the Supplemental Appendix at Exhibits 4-A – 4-B.

"WTC Claims" and collectively with the U.S. Bank Claim, the HSBC Claims, and the GS Claims, the "Other Claims").[12]

In the Makewhole Objection, the Debtors identified the relevant language in each of the Other Claims that the Debtors believed gave rise to payment of premiums.

- With respect to the U.S. Bank Claim, the Debtors stated that "[The U.S. Bank Claim] includes 'any and all amounts due and owing under the Indenture whether now owing or hereafter accrued and owing.' Attachment to [U.S. Bank Claim] ¶ 7." Makewhole Objection, Ex. G, at 9.

- With respect to the HSBC Claims, the Debtors stated that "[the HSBC Claims] include[] an unliquidated amount for 'interest, liquidated damages, optional or mandatory redemptions, redemption premiums, redemption prices, expenses, indemnities, compensatory, secondary and/or punitive damages, and all compensation obligations. . . .' Attachment to [HSBC Claims] ¶ 2." Makewhole Objection, Ex. G, at 9.

- With respect to the GS Claims, the Debtors stated that "[The GS Claims] also include[] certain 'contingent' amounts for 'prepayment fees.' Addendum to [GS Claims] ¶ 7." Makewhole Objection, Ex. G, at 8.

- With respect to the WTC Claims, the Debtors stated that "[the WTC Claims] include[] unliquidated amounts for 'interest, charges, make whole amounts, penalties, premiums, and advances which may be due or become due under the Notes and the Indenture [, including, without limitation, reasonable compensation, expenses, disbursements and advances (including, without limitation, reasonable fees and disbursements of counsel of the Indenture Trustee and (if applicable) of the Holders].' Addendum to [WTC Claims] at 5." Makewhole Objection, Ex. G, at 8-9; see also WTC Claims, Supp. App. Exs. 5A-5H, Addendum at 5.[13]

---

[12] Copies of the WTC Claims, without exhibits, are included in the Supplemental Appendix at Exhibits 5-A – 5-H.

[13] The Proof of Claim, which was also filed by the Original Trustee, included language nearly identical to that which was included in the WTC Claims and more specific than that which was included in the U.S. Bank Claim. To be certain, the Proof of Claim provides, in relevant part, as follows:

> Other Charges (UNLIQUIDATED). All other interest, charges, penalties, premiums and advances which may be due or become due under the Notes and the Indenture, including, without limitation, reasonable compensation, expenses, disbursements and advances

*(continued on next page)*

After identifying these portions of the Other Claims, the Debtors objected to each of the Other Claims to the extent they sought payment of, among other amounts, prepayment premiums, "make-whole" premiums, or damage claims as a result of alleged breaches of "no-call" provisions.[14] Indeed, on Exhibit B to the Makewhole Objection, the Debtors went so far as to quote the "alleged" "no-call" provisions and the alleged "make-whole" provisions.[15] In relevant instances, the Debtors even noted that the underlying documents lacked one or more provisions addressing make-whole premiums and that the no-call periods had expired.[16] Nonetheless, the Debtors still included all of the Other Claims in the Makewhole Objection and objected to the Other Claims with high degrees of specificity.

Less than one month later, on July 6, 2007, the Debtors filed the Limited Objection, but did not include the same arguments and authority that were included in the Makewhole Objection. Yet, the Debtors assert that the Limited Objection contemplated disallowance of a Premium and other unliquidated amounts.

---

*(continued from previous page)*

> (including, without limitation, reasonable fees and disbursements of counsel of the Indenture Trustee and (if applicable) of the Holders.

Proof of Claim, App. Ex. D, Addendum at 2.

[14] Makewhole Objection, Ex. G, at 11 (objecting to prepayment premiums or make-whole premiums asserted in the WTC and GS Claims); Id. at 11, n.9 (stating that "one of the [indentures] does not contain a premium provision of any kind[,]", but nonetheless objecting to such claim (a WTC Claim)); Id. at 19 (objecting to all of the WTC and GS Claims to the extent they seek damage claims for alleged breaches of no-call provisions or otherwise); Id. at 21, 24 (objecting to the HSBC and U.S. Bank Claims to the extent they seek payment of premiums); Id. at 22-23, 24 (objecting to damage claims for alleged breaches of "no-call" provisions).

[15] Id. at Ex. B.

[16] Id. at Ex. B, p.4.

## REPLY ARGUMENT

### I. THE BANKRUPTCY COURT ERRED AS A MATTER OF LAW WHEN THE BANKRUPTCY COURT ENTERED THE ORDER

With respect to issues numbered one through six in the section of the Opening Brief entitled "Statement of Issues on Appeal", the Indenture Trustee joins in the arguments advanced by the Appellant Noteholders in their reply brief and incorporates in this brief by reference the arguments advanced therein.

### II. THE INDENTURE TRUSTEE WAS NOT GIVEN ADEQUATE NOTICE AND WAS DEPRIVED DUE PROCESS, NOTWITHSTANDING THE APPELLEES' ASSERTIONS OTHERWISE

As set forth more fully in the Opening Brief, an objection to a proof of claim must satisfy the due process requirements of the U.S. Constitution and the notice requirements under the Bankruptcy Code. See Opening Brief at 13-14. With respect to these issues, the Appellees contend that the Debtors satisfied these requirements and, in support thereof, principally relied upon the following:

a. The proposed form of order and the "**RELIEF REQUESTED"** section of the Objection provided that, if the Objection was approved, the "New Claims" would be limited to principal and interest;

b. The Debtors were under no obligation to specifically object to every conceivable claim that could be alleged by the Indenture Trustee; and

c. The Indenture Trustee filed pleadings and appeared at the hearing.[17]

E.g. Debtors' Brief at 45-46, 48; CC Brief at 37-38; EC Brief at 36-38. As demonstrated below, these contentions are meritless and disingenuous, and the cases cited in support of these contentions are inapposite or distinguishable.

---

[17] The Debtors also assert that M&T did not read the proposed form of order. Debtors' Brief at 47. This is incorrect.

### A. The Debtors Were Required To Provide Adequate Notice By Supporting Their Relief Requested With Some Specificity, But Consciously Chose Not To Do So

The Indenture Trustee does not dispute that the Debtors made passing reference to limiting the Proof of Claim and the Supplemental Proof of Claim to principal and interest in the relief-requested section of the Limited Objection and in the proposed form of order. However, these limited references were insufficient to satisfy statutory or constitutional notice requirements because the Debtors were obligated to provide the Indenture Trustee with sufficient information to advise the Indenture Trustee that the Debtors were seeking to disallow the Indenture Trustee's claims for, among other things, indenture trustee fees and expenses and a Premium. C.f. Klein v. Wilson, Elser, Moskowitz, Edelman & Dicker (In re Highgate Equities, Ltd.), 279 F.3d 148, 153 (2d Cir. 2002) (holding that "notice and an opportunity to be heard" (a standard similar to the standard found in section 102(1) of the Bankruptcy Code) requires that the responding party receive "adequate notice of," and "an adequate opportunity to address," the basis upon which sanctions are ultimately imposed; issuing sanctions under 9011 based on a theory not addressed by the parties was reversible error).[18] Indeed, when the Debtors sought to disallow premiums claimed by other indenture trustees and limit other claims to the value of principal and interest, they objected with particularity and made more than passing references in the pleadings to such requests. See Makewhole Objection, App. Ex. G, at 1-27.

---

[18] The Debtors also assert that, where sophisticated parties are involved, broadly worded orders are acceptable. See Debtors' Brief at 47. In support, the Debtors cite this Court's decision in In re Johns-Manville Corp., 340 B.R. 49 (S.D.N.Y. 2006) (Koeltl, J.), aff'd, 476 F.3d 118 (2d Cir. 2007). However, as this Court is well aware, In re Johns-Manville does not stand for such a broad proposition and, even if it did, it is clearly distinguishable. In In re Johns-Manville, nearly twenty years after an order was entered, Chubb Insurance argued that it was not bound by a properly noticed order to which Chubb never objected prior to its entry. See id. at 68-69. In the instant case, by contrast, counsel to the Indenture Trustee notified the Debtors' counsel at the conclusion of the Hearing that it had comments to the proposed form of order and implicitly objected to such order when counsel expressed approval for the Alternate Order.

In the Makewhole Objection, the Debtors objected to the Other Claims. To provide the indenture trustees who filed the Other Claims with notice of the types and nature of claims that were subject to the Makewhole Objection, the Debtors went so far as to summarize relevant provisions of the Other Claims that gave rise to prepayment and "make-whole" premiums and "no-call" damage claims. <u>See</u>, <u>supra</u>, at 5. To support disallowance of these unliquidated claims, the Debtors also devoted 16 pages of the Makewhole Objection to argument and citations to seemingly relevant authority.

With respect to limiting the Other Claims to the value of principal and interest, the Debtors even devoted an entire section of the Makewhole Objection to this request. The section of the Makewhole Objection was entitled:

> **Pursuant To Rule 3012, The Disputed Claims Should Be Valued Not To Include Any Amounts In Excess Of Outstanding Principal, Plus Unpaid Interest, Through The Confirmation Date Of The Plan.**

Makewhole Objection, App. Ex. G, at 25 (emphasis in original).[19] In this section, the Debtors expressly stated, among other things, as follows:

> To facilitate confirmation of the Plan and to bring clarity to the issue of creditor and interestholder recovery, <u>the Debtors must confirm the exact amounts of the Disputed Claims</u>. . . . <u>The Debtors believe [the Disputed Claims] should be limited only to such outstanding principal, plus interest</u> at a rate to be determined by the Court prior to the Confirmation Date. <u>More specifically, the Debtors assert that their proposed treatment of the Disputed Claims under the Plan does not trigger any premium obligation (secured or unsecured) and, therefore, herein move the</u>

---

[19] Although Bankruptcy Rule 3012 is limited to determining the value of secured claims, the Debtors relied upon Bankruptcy Rule 3012 for purposes of determining the value of secured <u>and unsecured claims</u>. <u>See</u> Fed. R. Bank. P. 3012 (providing that "the court may determine the value of a claim secured by a lien on property in which the estate has an interest on motion of a party in interest . . ."); Makewhole Objection, App. Ex. G, at 2, 25 (stating that "claims filed in connection with the Second Lien Debt and the Unsecured Debt" are defined as Disputed Claims and providing that "the Debtors assert that their proposed treatment of the Disputed Claims under the Plan does not trigger any premium obligation (secured or unsecured) and, therefore, herein move the Court to determine, pursuant to Bankruptcy Rule 3012, the value of the Disputed Claims in amounts that do not include any asserted premiums.").

> Court to determine, pursuant to Bankruptcy Rule 3012, the value of the Disputed Claims in amounts that do not include any asserted premiums.

Makewhole Objection, App. Ex. G, at 25-26 (emphasis added). Thus, when the Debtors wanted to provide notice that they were seeking to disallow unliquidated claims similar to those asserted in the Proof of Claim, they certainly knew how to do so.

Yet, when the Debtors filed the Limited Objection, which the Appellees assert contemplated disallowance of all Premiums and sought to limit the Proof of Claim and the Supplemental Proof of Claim to principal and interest – the precise relief that the Debtors sought in the Makewhole Objection – the Debtors failed to state in any detail the factual or legal bases for the relief requested.[20] This is true even though (i) the Proof of Claim, which was filed by the Original Trustee, included language nearly identical to the language included in WTC Claims, and (ii) the language set forth in the Proof of Claim was more detailed on the subject of premiums than, for example, the U.S. Bank Claim. Compare, supra, at 5, n.13 (setting for the language included in the Proof of Claim), with, supra, at 5 (setting forth the language of the WTC and U.S. Bank Claims). In addition, the Debtors did not include a section addressing their request to limit the value of the Proof of Claim and the Supplemental Proof of Claim to principal and interest, by improper reference to Bankruptcy Rule 3012 or otherwise.

As a result of the Debtors' material omissions, all of which were included in a Makewhole Objection filed less than a month prior to the Limited Objection, the Debtors deprived the Indenture Trustee of adequate notice. The Indenture Trustee respectfully submits that the Bankruptcy Court's entry of the Order deprived the Indenture Trustee of due process.

---

[20] Similarly, the Debtors did not address the indenture trustee's fees and expenses in the Limited Objection.

**B. The Debtors Were Under An Obligation To Specifically Object To Those Claims Expressly Set Forth In The Proof Of Claim And The Indenture Trustee Was Not Obligated To Raise All Of Its Asserted Claims In Its Pleadings Or At The Hearing**

Pursuant to section 502(a) of the Bankruptcy Code, a claim that is filed is "deemed allowed", unless a party in interest objects. 11 U.S.C. § 502(a). Pursuant to Bankruptcy Rule 3001(f), "a proof of claim executed and filed in accordance with [the Bankruptcy Rules] shall constitute *prima facie* evidence of the validity and amount of the proof of claim." Fed. R. Bankr. P. 3001(f). It is well-established that although the burden of proof at all times rests with the claimant, an objection to a proof of claim must put forth proof sufficient to overcome the *prima facie* validity of the proof of claim. In re Adelphia Communs. Corp., 2007 Bankr. LEXIS 660, *15 (Bankr. S.D.N.Y. Feb. 20, 2007);[21] see In re JCC Capital Corp., 142 B.R. 82 (Bankr. S.D.N.Y. 1992) (holding that deemed allowance under section 502(a) of the Bankruptcy Code "compels the objecting party to go forward and produce sufficient evidence to rebut the claimant's *prima facie* case." (emphasis in original)); see also In re Dresser, 135 F. 495 (2d Cir. 1905) (holding that, under the Bankruptcy Act, "the objector, though not required to disprove the claim, must produce 'evidence whose probative force shall be equal to, or greater than, the evidence offered in the first instance by the claimant.'"), aff'd, Whitney v. Dresser, 200 U.S. 532 (1906). In other words, an objection to a proof of claim must do more than just "object." See id.[22]

---

[21] A copy of this opinion is included in the Supplemental Appendix as Exhibit 6.

[22] In the EC Brief, the Equity Committee cites In re Bagnato and In re King for the proposition that "the Debtors were not under an obligation to specifically object to every *conceivable* claim that could be alleged by the Appellants." EC Brief at 37 (emphasis in original). However, these cases actually support M&T's position because both courts recognized that a validly filed claim is *prima facie* evidence of the validity of the claims asserted therein, and the objector must bring forth sufficient evidence to overcome the presumption. See In re Bagnato, 80 B.R. 655, 658 (S.D.N.Y. 1987); In re King, 305 B.R. 152, 164-65 (Bankr. S.D.N.Y. 2004) (stating that "a properly filed proof of claim is deemed allowed unless a party in interest objects[;] such allowance compels the objecting party to go forward and produce sufficient

*(continued on next page)*

Notwithstanding these well-established principles, the Debtors boldly, but incorrectly assert that they are not required to object in detail to the Proof of Claim. See Debtors' Brief at 48, n.135. In support, the Debtors assert that they "were not aware of" the Indenture Trustee's claim for, among other things, a Premium. Yet, as set forth above,[23] the Debtors cited nearly identical (and in one instance, less descriptive) language as evidence of other indenture trustees' claims for premiums. Thus, for the Debtors to suggest that they were not aware of the Indenture Trustee's claim for a Premium and fees and expenses is, at the very least, disingenuous.

Because the Debtors had to be well aware of the Indenture Trustee's claims for a Premium and fees and expenses, applicable law required the Debtors to come forward with sufficient proof to overcome the *prima facie* validity of the Proof of Claim, precisely as they had done on prior occasion in the Makewhole Objection. Without such proof, the Limited Objection was insufficient as a matter of law and, contrary to the Debtors' assertions, the Indenture Trustee was not required to "intuit" the claims to which the Debtors objected. Moreover, the Indenture Trustee was not required to address objections to portions of the Proof of Claim that had never been lodged by the Debtors or to otherwise assert that the Proof of Claim in all respects was valid

*(continued from previous page)*

evidence to rebut the claimant's *prima facie* case"). Although Judge Schwartzberg, in In re Bagnato, stated that "[u]ltimately, even though a properly executed bankruptcy claim does not shift the burden of producing evidence to the objector, the burden of persuasion remains at all times with the claimant . . .[,]" it is evident from the case cited (and Judge Schwartzberg's subsequent decisions on the issue) that including "not" was an error. See In re Friedman, 436 F. Supp. 234 (D. Md. 1977) (cited in In re Bagnato). E.g. In re JCC Capital, 142 B.R. at 85 (Schwartzberg, J.). Thus, the statement should be read as follows:

> Ultimately, even though a properly executed bankruptcy claim does [] shift the burden of producing evidence to the objector, the burden of persuasion remains at all times with the claimant . . .[.]

See id.

23 See, supra, at 5.

and allowed. To do so would have been unnecessary because the Proof of Claim was deemed allowed and was *prima facie* valid.[24]

Accordingly, the Debtors were required to object with particularity to the Indenture Trustee's claims and their failure to do so deprived the Indenture Trustee of adequate notice and due process.

## III. THE APPELLEES FAIL TO CITE ANY FINDING OF FACT OR CONCLUSION OF LAW RELATING TO ANY UNLIQUIDATED CLAIM OTHER THAN THE CONVERSION RIGHT CLAIM

As set forth more fully in the Opening Brief, all findings of fact and conclusions of law must be supported by the record. See Taylor v. Taylor (In re Taylor), 233 B.R. 639 (S.D.N.Y. 1999) (holding that the record before the bankruptcy court was insufficient to grant the relief requested, and accordingly, the bankruptcy court's order was reversed). Although the Appellees contend that the record contains sufficient findings of fact and conclusions of law, the record does not support their contentions because the record does not contain any findings of fact or conclusions of law to support disallowance of any part of the Proof of Claim or the Supplemental Proof of Claim, other than the Conversion Right Claim.

[24] The Equity Committee argues that Indenture Trustee's due process rights were not infringed because the Indenture Trustee (and the other appellants) focused its arguments in its pleadings and at the hearing. In support, the Equity Committee cites C-TC 9th Ave. Pshp. v. Norton Co. (In re C-TC 9th Ave. Pshp.), 113 F.3d 1304 (2d Cir. 1997). Again, this citation does not support the Equity Committee's position and, instead, supports the Indenture Trustee's position because the Second Circuit Court of Appeals expressly ruled that the "record must be sufficiently developed" for the lower court to issue a ruling. Id. at 1312. Unlike the instant case, the record before the court in C-TC 9th Ave. was sufficiently well-developed in that the parties had addressed all of the issues in their papers (or were at least on adequate notice of all of the issues) and responded accordingly. As demonstrated herein and in the Opening Brief, the record was not sufficiently developed and the Indenture Trustee was not provided with adequate notice of the full-extent of the Debtors' relief requested because the Debtors omitted material information.

The Equity Committee cites to pages 101-102 of the Transcript Opinion as evidence of the Bankruptcy Court's "clear[] articulat[ion] [of] the basis for its decision and the basis for the relief requested by the Debtors (i.e., that the Debtors were requesting the denial of the New Claims to the extent they sought more than the Repayment Amounts)." EC Brief at 39. However, because the Equity Committee fails to quote the "clearly articulated basis" for granting the relief requested, i.e., the basis for disallowing all claims beyond principal and interest, the Indenture Trustee and this Court are left to speculate. The only seemingly relevant text that appears on pages 101-102 of the Transcript Opinion is the following:

> In conclusion, for the reasons just set forth the new claims were filed after the bar date and accordingly are time barred. Even were the new claims [] to be allowed as timely amendments the claims for damages on account of the conversion rights under the indentures would be disallowed or at best subordinated. The four percent notes have already expired by their [terms] and could not be entitled to conversion right damages under any theory. Accordingly, the debtors' limited objection to the new claims is granted. Settle an order consistent with this decision.

Transcript Opinion, App. Ex. S, at 101-102. From this language, it is impossible for the Indenture Trustee to ascertain the reasoning underlying the Bankruptcy Court's decision to disallow, for example, a Premium or fees and expenses, let alone to enable this Court to conduct a meaningful review of Bankruptcy Court's findings of fact and conclusions of law.

The Creditors Committee attempts to quote seemingly relevant sections of the Transcript Opinion. CC Brief at 39. However, the "lifted" quotes are taken out of context and do not provide any support for disallowance of unliquidated amounts beyond the Conversion Right Claim. Indeed, each of the quoted passages refer, either expressly or implicitly, to the "new claims," which were expressly defined by the Bankruptcy Court as the Conversion Right

Claims,[25] and did not refer to any other unliquidated claims. E.g. Transcript Opinion, App. Ex. R, at 96 (discussing "new claims" and not other unliquidated claims).

The Debtors, apparently conceding that the Transcript Opinion is devoid of findings of fact and conclusions of law for claims other than the Conversion Right Claim, do not cite to or quote any portion of the Transcript Opinion to rebut the Indenture Trustee's contention that the Transcript Opinion lacked such findings of fact and conclusions of law. Instead, because they are unable to find support in the record, the Debtors contend that the Bankruptcy Court's interpretation of the Order is entitled to the utmost deference by the Court. Debtors' Brief at 49; see CC Brief at 39. This is a red herring.

Contrary to the Appellees' assertions, the Indenture Trustee does not contend that Judge Lifland improperly interpreted the Order. Rather, the Indenture Trustee respectfully contends that the Bankruptcy Court improperly interpreted the record. As a result, the cases cited by the Debtors are inapposite[26] because they do not involve a review of the adequacy of the record, which is precisely what an appellate court is charged with undertaking during an appeal. See, e.g., Stonewall Ins. Co. v. Asbestos Claims Mgmt. Corp., 73 F.3d 1178 (2d Cir. 1995) (discussing appellate review of the record to determine the adequacy of evidence). Thus, the Indenture Trustee respectfully submits that this Court is not entitled to give deference to the

---

[25] The Bankruptcy Court defined new claims as the "'supplemental' proofs of claims seeking in addition to repayment of outstanding principal and accrued interest[,] damages for 'any breach' of the conversion rights, collectively the new claims." Transcript, App. Ex. R, at 96.

[26] The Debtors' cite In re Case, 198 F.3d 327, 334 (2d Cir. 1999). In Case, the Second Circuit Court of Appeals was attempting to interpret a bankruptcy court's order after the bankruptcy court had already issued a memorandum opinion expressly interpreting its order. Because the court found that the bankruptcy court's subsequent interpretation was clear, the court ruled that the bankruptcy court's interpretation was entitled to great deference. Id. at 333-34. In contrast, here, Judge Lifland has not interpreted the provisions of his Honor's own order and, as a result, the Case decision is inapposite.

Bankruptcy Court's interpretation of the Order – the Bankruptcy Court did not interpret the Order – and should review the record to determine whether it was adequate to support entry of the Order.

Because the record is devoid of any findings of fact or conclusions of law beyond the Conversion Right Claim, the Indenture Trustee respectfully submits that the Order should be vacated and reversed.

**CONCLUSION**

In light of the foregoing, the Indenture Trustee respectfully submits that the Bankruptcy Court's ruling and entry of the Order sustaining the Limited Objection were incorrect as a matter of law. Accordingly, the Indenture Trustee respectfully requests that this Court reverse the Bankruptcy Court, vacate the Order, and remand this matter to the Bankruptcy Court for further proceedings.

Dated: Wilmington, Delaware
October 1, 2007

Respectfully submitted,

YOUNG CONAWAY STARGATT & TAYLOR, LLP

By: /s/ *Ian S. Fredericks*
Pauline K. Morgan (PM-3361)
Ian S. Fredericks (IF-3355)

The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
Tel: (302) 571-6600
Fax: (302) 571-1253

*Attorneys for Manufactures & Traders Trust Company, as Successor Indenture Trustee for the 7.75% Contingent Convertible Notes Due 2015 issued by Calpine Corporation*